[Cite as *State v. Edwards*, 2013-Ohio-1290.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-L-034** |
| TARENCE E. EDWARDS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 11 CR 000592.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Alana A. Rezaee* and *Patrick J. Condon*, Assistant Prosecutors, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Judson J. Hawkins*, Parkhill Professional Building, 35104 Euclid Avenue, Suite 101, Willoughby, OH 44094 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Tarence E. Edwards, appeals from the April 5, 2012 judgment of the Lake County Court of Common Pleas, sentencing him for aggravated robbery, robbery, kidnapping, abduction, and theft.

{¶2} On October 11, 2011, appellant was secretly indicted by the Lake County Grand Jury on six counts: count one, aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), with an accompanying repeat violent offender

specification in violation of R.C. 2941.149; count two, robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(2), with an accompanying repeat violent offender specification in violation of R.C. 2941.149; count three, robbery, a felony of the third degree, in violation of R.C. 2911.02(A)(3); count four, kidnapping, a felony of the second degree, in violation of R.C. 2905.01(A)(2), with an accompanying repeat violent offender specification in violation of R.C. 2941.149; count five, abduction, a felony of the third degree, in violation of R.C. 2905.02(A)(2); and count six, theft, a felony of the fifth degree, in violation of R.C. 2913.02(A)(1). Appellant pleaded not guilty to all charges.

{¶3} A jury trial commenced on February 13, 2012. At trial, Omar Suleiman ("the victim"), owner of Raw Styles in Painesville, Lake County, Ohio, testified for appellee, the state of Ohio, that his store was robbed by three men on September 24, 2011. While he was getting ready to close for the night, a man the victim knew by the name of "Speedy" came in. Speedy went to a shoe display and asked the victim if he could try on a pair of shoes in his size. As the victim was entering the back room, Speedy came behind him with a knife. Speedy told the victim it was a "shakedown."

{¶4} At that point, the victim testified that a second man wearing a skull cap and a bandana over his mouth entered the back room. The second man looked familiar to the victim, as he could see his face from beneath his nose to the middle of his forehead. During a struggle between the victim and the second man, the victim observed Speedy go behind the cash registers. The second man pushed the victim further into the back room, turned him around, held him down, and attempted to duct tape his hands behind his back. The victim heard a third man yell, "let's go," and the three men took off running. The victim pressed the store's panic button. He attempted

to chase after the men, but was unsuccessful. After returning to the store, the victim discovered that almost $4,000 in cash was taken from the registers.

{¶5} Officer William Smith ("Officer Smith") with the Painesville City Police Department ("PCPD") was dispatched to Raw Styles after learning that three African American male robbers were seen leaving in a white SUV. At the scene, Officer Smith spoke with the victim about the incident. Officer Smith testified for the state that he noticed that the victim was missing hair from his arm. Officer Smith saw a piece of duct tape located on the ground near the registers.

{¶6} Later that night, the victim was shown two photo line-ups. He identified Lawrence Bolden, a.k.a. "Speedy," in one and Joel Martin ("Martin") in the other. The victim indicated that Martin used to work for him. Warrants were issued for Speedy and Martin. Officers continued to investigate the identity of the remaining suspect.

{¶7} About a week after the incident, officers spoke with Martin following his arrest. Martin identified Speedy and appellant as being involved in the crime. Detective John Levicki ("Detective Levicki") with the PCPD conducted another photo line-up, this time including a photo of appellant. On October 5, 2011, Detective Levicki met with the victim to administer the photo line-up. The victim identified appellant as the second man with the partially covered face who tried to duct tape him. The victim testified that he was familiar with appellant from past dealings.

{¶8} About two weeks later, officers spoke with Speedy following his arrest. Speedy admitted to Detective Levicki that he was involved in the robbery at Raw Styles with Martin and appellant. Speedy told officers, as well as testified for the state, that he and Martin were friends and that appellant, who he called "T-Rex," was Martin's

3

nephew. According to Speedy, on the night of the robbery, he went to Martin's house. They smoked crack cocaine and appellant arrived shortly thereafter. Speedy indicated that Martin was upset about being recently fired from Raw Styles. Speedy further stated that appellant was also upset and talked about robbing the store. The three men then devised and set their plan into motion.

{¶9} Appellant drove his white Lexus SUV with Martin as the front seat passenger and Speedy in the back seat. They parked on a nearby street and entered Raw Styles. Speedy testified that he went into the store and asked the victim if he could try on a pair of shoes. Speedy followed the victim into the back room and pulled a knife on him. According to Speedy, Martin and appellant then ran into the store. Martin went to the cash registers while appellant, who wore a partial face mask, went to the back room and began wrestling with the victim. The three men ran out of the store to appellant's car with cash in hand. After leaving the scene, Martin passed out money to Speedy and appellant.

{¶10} Thereafter, on November 4, 2011, appellant went to Raw Styles to pay a bill. After recognizing appellant, the victim pressed the panic alarm. Officer Matt Tycast ("Officer Tycast") with the PCPD testified for the state that he responded to the call. Officer Tycast arrested appellant and took him into custody. Appellant later spoke with Detective Levicki. In a recorded interview admitted at trial over appellant's objection, Detective Levicki informed appellant that two individuals named appellant as being involved in the September 24, 2011 crime. Appellant denied any involvement.

{¶11} While incarcerated, appellant's jail calls were collected. A portion of one call between appellant and Yolanda Webber ("Webber"), the mother of appellant's son,

4

was played for the jury, over appellant's objection. In that call, appellant explained that he felt he needed to get money for Webber. Webber responded by asking appellant if this was all her fault. Appellant replied that it was not Webber's fault but rather his own fault for the decisions he had made.

{¶12} After the state rested, appellant called several witnesses to testify on his behalf, including: Webber, his sisters Fateria and Rebecca Edwards, his cousin Johnny Rivers ("Rivers"), and Rivers' girlfriend Amy Darroch. Collectively, appellant's witnesses testified that he was at his mother's house and that his white SUV was in Fateria Edwards' possession during the time frame of the robbery.

{¶13} Following trial, the jury found appellant guilty on all counts. The trial court deferred sentencing and the matter was referred to the Adult Probation Department for a presentence investigation report and victim impact statement.

{¶14} At the sentencing hearing, the trial court found appellant guilty of the repeat violent offender specification accompanying count one and found him to be a repeat violent offender.

{¶15} Pursuant to its April 5, 2012 judgment, the trial court sentenced appellant to a 21-year total prison term. Specifically, appellant was sentenced to ten years on count one and five years on count four, to run consecutive to each other. Counts two, three, and six merged with count one, and count five merged with count four. The trial court further ordered appellant to serve an additional six years on the repeat violent offender specification, to be served prior to and consecutive to the foregoing prison term. Appellant filed a timely appeal asserting the following five assignments of error for our review:

{¶16} "[1.] The trial court committed prejudicial error and violated Appellant's VI Amendment rights to confront the witnesses against him and the Ohio Rules of Evidence by introducing hearsay statements of co-defendants and others via the introduction of a recorded interview between the police and Appellant.

{¶17} "[2.] The trial court committed prejudicial error in permitting the introduction of Appellant's pre-trial denials of guilt. These statements were not relevant pursuant to Evid.R. 401 and, even if relevant, should have been excluded pursuant to Evid.R. 403(A).

{¶18} "[3.] The trial court committed prejudicial error in permitting, over Appellant's objection, the introduction of a brief segment of a jail house tape recorded telephone call between Appellant and Yolanda Webber that occurred several months after the crime.

{¶19} "[4.] The trial court erred by treating both Aggravated Robbery and Kidnapping as separate crimes for the purposes of sentencing.

{¶20} "[5.] The trial court erred in sentencing Appellant to consecutive sentences by using facts not presented to the jury and not found by the jury."

{¶21} In his first assignment of error, appellant argues that the trial court erred and violated his constitutional right to confront witnesses against him and the Ohio Rules of Evidence by introducing hearsay statements of co-defendants and others via the introduction of a recorded interview he had with police.

{¶22} In his second assignment of error, appellant contends that the trial court erred in permitting the introduction of his pre-trial denials of guilt. Appellant maintains that his statements to Detective Levicki were not relevant pursuant to Evid.R. 401 and,

even if relevant, should have been excluded pursuant to Evid.R. 403(A). Appellant further argues that the trial court erred in permitting the state to introduce, over his objection, the video-taped interview in order to demonstrate to the jury his "demeanor" and "reaction" to Detective Levicki's statement that his co-defendants had identified him as a participant in the crime.

**{¶23}** Because appellant's first and second assignments of error are interrelated, we will address them together.

**{¶24}** Although we generally review decisions on the admission of evidence for an abuse of discretion, appellate courts apply a de novo standard of review to evidentiary questions raised under the Confrontation Clause. *See State v. Hall*, 8th Dist. No. 96680, 2012-Ohio-266, ¶21.

**{¶25}** With regard to appellant's constitutional argument, the Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" Thus, the Confrontation Clause bars the "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

**{¶26}** The threshold inquiry is whether the challenged out-of-court statements were testimonial in nature and needed to be tested by confrontation. *See State v. Lewis*, 1st Dist. Nos. C-050989 and C-060010, 2007-Ohio-1485, ¶30. Statements are "testimonial when the circumstances objectively indicate that there is no * * * ongoing emergency, and that the primary purpose of the interrogation is to establish or prove

7

past events potentially relevant to later prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, paragraph one of the syllabus.

**{¶27}** Confrontation Clause violations are subject to harmless error analysis. *See State v. Kraft*, 1st Dist. No. C-060238, 2007-Ohio-2247, ¶67, citing *United States v. Summers*, 414 F.3d 1287, 1303 (10th Cir.2005). "A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶78, citing *Chapman v. California*, 386 U.S. 18, 24 (1967).

**{¶28}** With respect to appellant's evidence argument, Evid.R. 401 states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**{¶29}** Evid.R. 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."

**{¶30}** Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

**{¶31}** Hearsay is defined as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

8

asserted." Evid.R. 801(C). Hearsay is inadmissible at trial, unless it falls under an exception to the Rules of Evidence. Evid.R. 802.

**{¶32}** Evid.R. 801(D)(2)(a) provides that a statement is "not hearsay" if, "The statement is offered against a party and is * * * the party's own statement * * *."

**{¶33}** In this case, appellant's own out-of-court statements denying his guilt, made during his interview with Detective Levicki and offered against him at trial, are relevant and admissible pursuant to Evid.R. 401, 402, and 801(D)(2)(a). The admission of the video-taped interview, as a whole, did not cause appellant unfair prejudice, confuse the issues, and/or mislead the jury under Evid.R. 403(A). The majority of the video-taped interview allowed the jury to observe appellant's responses to Detective Levicki's inquiries and his overall demeanor in order to determine his credibility. However, the trial court should not have allowed into evidence the portion of the tape where Detective Levicki stated that appellant's co-defendants and "others" implicated him in the crime.

**{¶34}** Prior to speaking with appellant, Detective Levicki interviewed appellant's co-defendants, Speedy and Martin, about the robbery. During appellant's recorded interview, Detective Levicki said that responses made by appellant's co-defendants and "others" indicated that appellant was involved in the crime. Specifically, Detective Levicki informed appellant that "other people say you did it," "people named you as being involved," "two people * * * involved with the crime implicated you," and "they both gave your name up." Also, Detective Levicki said that "this was already taken to the Grand Jury and the Grand Jury listened to the case, listened to the evidence that we had, and the Grand Jury felt there was enough to give an indictment for your arrest."

9

**{¶35}** We stress that Speedy testified at trial, however, Martin did not, and thus, was not subject to cross-examination by appellant. In addition, we do not know who the "others" are that Detective Levicki referred to and/or whether they testified at trial. Thus, these testimonial statements are barred by the Confrontation Clause and their admission violated appellant's Sixth Amendment rights. *See Crawford* and *Davis*, *supra.*

**{¶36}** The trial court attempted to "cure" the foregoing by providing the following limiting instruction to the jury:

**{¶37}** "Evidence has been submitted of the police questioning of the Defendant. The police are permitted by law to engage in deception in an effort to elicit admissions from the Defendant. The jury is not to consider as evidence any statement made by the police during the questioning of the Defendant that has not been agreed to or adopted by the Defendant, or otherwise has not been proven by other evidence during the trial."

**{¶38}** Most testimonial statements are too damaging for a lay juror to separate and/or ignore. *See e.g. State v. White*, 8th Dist. No. 72011, 1998 Ohio App. LEXIS 1622, *7 (April 16, 1998), citing *Bruton v. United States*, 391 U.S. 123 (1968). "The rationale of *Bruton* was that the introduction of a potentially unreliable confession of one defendant which implicates another defendant without being subject to cross-examination deprives the latter defendant of his right to confrontation guaranteed by the Sixth Amendment." *United States v. Fleming*, 594 F.2d 598, 602 (7th Cir.1979). The *Bruton* rule also applies to statements of co-defendants that are not confessions. *State v. Moritz*, 63 Ohio St.2d 150, 155 (1980). This same concept applies here in regard to *Crawford* and its progeny.

10

**{¶39}** "Cases following *Bruton* have established that the error may be harmless." *State v. Holdsworth*, 11th Dist. No. 90-P-2231, 1992 Ohio App. LEXIS 724, *14 (Feb. 21, 1991). Thus, *Bruton* violations are subject to harmless error review. *See State v. Burney*, 10th Dist. No. 06AP-990, 2007-Ohio-7137, ¶53, citing *Harrington v. California*, 395 U.S. 250, 252-254 (1969). "'"The mere finding of a violation of the *Bruton* rule in the course of the trial * * * does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission [or statements] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error. (* * *)"' *Moritz* at 156, citing *Schneble v. Florida* (1972), 405 U.S. 427, 430." *Holdsworth* at *14.

**{¶40}** Based on the facts of this case, the limiting instruction alone was not enough to cure the *Bruton* violation because the jury had already heard the testimonial statements of Detective Levicki that appellant's co-defendants and "others" said that appellant committed the crime. Courts should be mindful that such testimonial statements may be too damaging for a lay juror to separate and/or ignore. However, the *Bruton* violation did not prejudice appellant as there was other evidence of his guilt. *See e.g. Holdsworth, supra,* at *14. The facts in the case before us are not sufficient given the overwhelming evidence of guilt properly before the jury. Thus, the trial court's error was harmless. *Id.*

**{¶41}** Appellant's first and second assignments of error are without merit.

**{¶42}** In his third assignment of error, appellant alleges that the trial court erred in permitting, over his objection, the introduction of a brief segment of the jail house tape

11

recorded telephone call between him and Webber that occurred several months after the crime. Appellant maintains that the call was not placed in context and was inaudible.

{¶43} The Supreme Court of Ohio in *State v. Robb*, 88 Ohio St.3d 59, 72 (2000), stated:

{¶44} "'To be admissible, a tape recording must be "authentic, accurate and trustworthy."' *State v. Coleman* (1999), 85 Ohio St.3d 129, 141 * * *, quoting *State v. Rogan* (1994), 94 Ohio App.3d 140, 148 * * *. Whether to admit tape recordings that are partly inaudible rests within the sound discretion of the trial court. *Coleman* at 141 * * *. See, also, *State v. Gotsis* (1984), 13 Ohio App.3d 282, 283 * * *; *United States v. Haldeman* (C.A.D.C.1976), * * * 559 F.2d 31 (tape with unexplained gap held admissible); *United States v. Slade* (C.A.D.C.1980), * * * 627 F.2d 293, 301 (tapes are admissible unless inaudibility renders tape as a whole untrustworthy)."

{¶45} In the case at bar, the trial court did not err in admitting a portion of the jail house tape recorded telephone call between appellant and Webber, the mother of his son who also testified at trial. Two detectives testified with respect to the recording. Detective Donald Seamon ("Detective Seamon") with the Lake County Sheriff's Office testified for the state regarding the jail's call system. He explained the manner in which inmate phone calls are recorded. Detective Seamon further indicated his involvement in compiling all of appellant's jail calls during the time period from November 4, 2011 through January 31, 2012. Also, Detective Levicki testified that it was appellant's voice on the recording. Thus, pursuant to the detectives' testimony, the tape recording was

12

"authentic, accurate and trustworthy," and therefore, properly admitted. *Robb, supra,* at 72.

{¶46} Although portions of the recording are somewhat inaudible, the inaudibility did not render the tape as a whole untrustworthy. *Id.* As such, the trial court acted within its discretion in admitting the recording. *Id.* Appellant claims that his conversation with Webber established that *he* needed money while in jail. However, the recording actually reveals that appellant had a prior need to get money *for Webber.* As stated, appellant explained on the recording that he felt that he needed to get Webber money. Webber responded by asking appellant if this was all her fault. Appellant replied that it was not Webber's fault but rather his own fault for the decisions he had made. The portion of the recording at issue created a reasonable inference that appellant committed the robbery because he felt the need to get money for Webber. Thus, the state's use of the recording was to establish a possible motive appellant may have had at the time of the crime.

{¶47} Appellant's third assignment of error is without merit.

{¶48} In his fourth assignment of error, appellant argues that the trial court erred by treating aggravated robbery and kidnapping as separate crimes for the purposes of sentencing. Appellant stresses that the presence of duct tape found at the scene, without proof that it was brought to the crime, does not amount to a separate animus sufficient to prevent a merger of the crimes.

{¶49} Our review of an allied offenses question is de novo. *State v. Williams*, Slip Opinion No. 2012-Ohio-5699, ¶12. "R.C. 2941.25 'codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and

13

Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense.' *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, * * * ¶23. At the heart of R.C. 2941.25 is the judicial doctrine of merger; merger is 'the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.' *State v. Botta*, 27 Ohio St.2d 196, 201 * * * (1971)." (Parallel citations omitted.) *Williams* at ¶13.

**{¶50}** R.C. 2941.25 states:

**{¶51}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶52}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶53}** "To ensure compliance with both R.C. 2941.25 and the Double Jeopardy Clause, 'a trial court is required to merge allied offenses of similar import at sentencing. Thus, when the issue of allied offenses is before the court, the question is not whether a particular sentence is justified, but whether the defendant may be sentenced upon all the offenses.' *Underwood* at ¶27." *Williams, supra,* at ¶15.

**{¶54}** The method employed by courts in determining whether two crimes constitute allied offenses of similar import has evolved. In *State v. Rance*, 85 Ohio

14

St.3d 632 (1999), the Supreme Court of Ohio held that "[u]nder an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared *in the abstract.*" *Id.*, paragraph one of the syllabus. (Emphasis sic.) Since its release, *Rance* has gone through various modifications and revisions. *See State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625; *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569; *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059.

**{¶55}** The Supreme Court of Ohio revisited the allied offenses analysis again in 2010 and overruled *Rance* in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Under the new analysis, which this court later relied upon and embraced in *State v. May*, 11th Dist. No. 2010-L-131, 2011-Ohio-5233, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson*, at the syllabus. The *Johnson* court provided the new analysis as follows:

**{¶56}** "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

**{¶57}** "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' * * *.

15

**{¶58}** "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

**{¶59}** "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has [a] separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶48-51. (Citations omitted.) (Emphasis sic.)

**{¶60}** This court went on to state in *May, supra,* at ¶50-51:

**{¶61}** "'In departing from the former test, the court developed a new, more context-based test for analyzing whether two offenses are allied thereby necessitating a merger. In doing so, the court focused upon the unambiguous language of R.C. 2941.25, requiring the allied-offense analysis to center upon the defendant's conduct, rather than the elements of the crimes which are charged as a result of the defendant's conduct.'" [*State v.*] *Miller*[,11th Dist. No. 2009-P-0090, 2011-Ohio-1161,] at ¶47, citing *Johnson* at ¶48-52.

**{¶62}** "'The (*Johnson*) court acknowledged the results of the above analysis will vary on a case-by-case basis. Hence, while two crimes in one case may merge, the same crimes in another may not. Given the statutory language, however, this is not a problem. The court observed that inconsistencies in outcome are both necessary and permissible "(* * *) given that the statute instructs courts to examine a defendant's conduct - an inherently subjective determination.'" *Miller* at ¶52, quoting *Johnson* at ¶52."

16

**{¶63}** In our case, the issue is whether aggravated robbery and kidnapping are allied offenses of similar import subject to merger for purposes of sentencing, which we will review de novo. *Williams, supra,* at ¶12.

**{¶64}** Aggravated robbery, under R.C. 2911.01(A)(1), states in part: "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

**{¶65}** Kidnapping, under R.C. 2905.01(A)(2), provides in part: "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o facilitate the commission of any felony or flight thereafter[.]"

**{¶66}** The Supreme Court of Ohio has held that aggravated robbery and kidnapping are allied offenses of similar import. *See State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶11. Again, under R.C. 2941.25, Ohio's multiple-count statute, if a defendant's conduct results in allied offenses of similar import, the defendant may ordinarily be convicted of only one of the offenses. R.C. 2941.25(A). However, if the defendant commits each offense separately or with a separate animus, then convictions may be entered for both offenses. R.C. 2941.25(B); *see also State v. Dean*, 11th Dist. No. 2010-P-0003, 2010-Ohio-5185, ¶40 (holding that the trial court did not abuse its discretion in not merging aggravated robbery and kidnapping for sentencing because each had a separate animus.)

17

**{¶67}** Thus, although aggravated robbery and kidnapping are allied offenses, our treatment of appellant's argument is not over. The specific facts of this case must be reviewed to determine whether appellant committed the charged offenses separately or with a separate animus so as to permit multiple punishments.

**{¶68}** At the sentencing hearing, appellant's counsel argued that the aggravated robbery and kidnapping charges should merge for purposes of sentencing. Following a lengthy discussion, the trial court determined that the offenses would not merge because each was committed with a separate animus. Based on the facts presented, we agree with the trial court.

**{¶69}** The aggravated robbery was complete when Speedy held the victim at knife point, told him it was a "shakedown," and Martin entered the store to empty the cash registers. Appellant, wearing a skull cap and a bandana over his mouth, continued to restrain the victim and a physical struggle ensued between appellant and the victim in the back room. The victim indicated that appellant pushed him further into the back room, while Martin was emptying the registers. Appellant attempted to duct tape the victim's hands behind his back during the struggle, which resulted in hair loss to the victim's arm. Although there is no evidence in the record that the duct tape used to restrain the victim was brought to the robbery, duct tape was nevertheless found at the scene, which corroborates appellant's intent to physically restrain the victim. Thus, the plan to get the victim into the back room and the prolonged restraint involved subjected him to an increase in the risk of harm that was separate and apart from the aggravated robbery. *See State v. Chaffer*, 1st Dist. No. C-090602, 2010-Ohio-4471, ¶11, citing *State v. Logan*, 60 Ohio St.2d 126, syllabus (1979) (holding "that even without

18

prolonged restraint, secret confinement, or substantial movement, where the asportation or restraint exposes the victims to a substantial increase in the risk of harm separate and apart from the underlying crime of robbery, a separate animus exists for kidnapping.")

{¶70} Based on the facts of this case, the aggravated robbery and kidnapping were not committed with the same animus. Therefore, appellant was properly sentenced separately for each offense under R.C. 2941.25(B) and *Johnson*.

{¶71} Appellant's fourth assignment of error is without merit.

{¶72} In his fifth assignment of error, appellant contends that the trial court erred in sentencing him to consecutive sentences by using facts not presented to and found by the jury. Appellant bases his argument on constitutional violations raised in *Blakely v. Washington*, 542 U.S. 296 (2004), and *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, claiming that the jury must make the finding that a separate animus exists before consecutive sentences can be imposed for allied offenses.

{¶73} In reviewing sentences post-*Foster*, we note that "[t]he jury-trial guarantee of the Sixth Amendment to the United States Constitution does not preclude states from requiring trial court judges to engage in judicial fact-finding prior to imposing consecutive sentences. (*Oregon v. Ice*, 555 U.S. 160 * * * (2009), construed.)" *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, paragraph one of the syllabus. This court stated in *State v. Hamilton*, 11th Dist. No. 2011-P-0044, 2012-Ohio-1457, ¶21, that "[t]rial judges have '"the discretion and inherent authority to determine whether a prison sentence within the statutory range shall run consecutively or concurrently."' [*Hodge*] at

19

¶12, quoting *State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, * * * ¶18-19."
(Parallel citations omitted.)

**{¶74}** With regard to allied offenses, the Supreme Court of Ohio in *Johnson* determined that R.C. 2941.25 "expressly instructs courts to consider the offenses at issue in light of the defendant's conduct" and repeatedly stated that it is "the court" that determines prior to sentencing whether the offenses are committed by the same conduct or if a separate animus exists. *Johnson, supra,* at ¶46-51.

**{¶75}** Thus, contrary to appellant's argument, trial court judges have the discretion and inherent authority to determine whether offenses are committed by the same conduct or if a separate animus exists, and whether a prison sentence within the statutory range shall run consecutively. In this case, the trial court properly exercised its discretion and authority in finding that a separate animus existed. As stated, a lengthy discussion occurred at the sentencing hearing regarding the evidence and what the trial court could consider in making its merger determination. Again, although there is no evidence in the record that the duct tape used to restrain the victim was brought to the robbery, duct tape was nevertheless found at the scene, which corroborates appellant's intent to physically restrain the victim. Also, the testimony from the jury trial revealed that appellant held the victim in the back room, which provided Martin with the opportunity to empty the cash registers.

**{¶76}** In addition, before sentencing appellant consecutively, the trial court considered the record, oral statements, any victim impact statement, pre-sentence report and/or drug and alcohol evaluation as well as the principles and purposes of sentencing under R.C. 2929.11, and balanced the seriousness and recidivism factors

20

under R.C. 2929.12. Pursuant to R.C. 2929.14(C)(4) and 2929.19(B)(2)(b), the trial court further found that consecutive sentences are necessary to protect the public from future crime or to punish appellant and are not disproportionate to his conduct and the danger he poses to the public.

{¶77} Appellant's fifth assignment of error is without merit.

{¶78} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed. The court finds there were reasonable grounds for this appeal.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.