[Cite as *State v. Miller*, 2020-Ohio-3854.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2019-P-0030** |
| - vs - | : | |
| CAMERON M. MILLER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2018 CR 00672.

Judgment: Affirmed in part, reversed in part, and remanded.


*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Paul M. Grant*, 209 South Main Street, 8th Floor, Akron, OH 44308 (For Defendant-Appellant).


MATT LYNCH, J.

{¶1} Defendant-appellant, Cameron M. Miller, appeals from his convictions for Felonious Assault and Having Weapons While Under Disability in the Portage County Court of Common Pleas. For the following reasons, we affirm in part and reverse in part the judgment of the lower court and remand for further proceedings consistent with this opinion.

{¶2} Beginning on July 12, 2018, several indictments, amended indictments, and supplemental indictments were filed against Miller, arising from the same events.

Pursuant to the December 24, 2018 Amended Indictment, Miller was indicted by the Portage County Grand Jury for the following: Attempted Murder (Count One), a felony of the first degree, in violation of R.C. 2903.02(A) and 2923.02; Felonious Assault (Counts Two and Five through Ten), felonies of the second degree, in violation of R.C. 2903.11(A)(2); Aggravated Robbery (Count Three), a felony of the first degree, in violation of R.C. 2911.01(A)(1); and Having Weapons While Under Disability (Count Four), a felony of the third degree, in violation of R.C. 2923.13(A)(3), (B), and (C), later amended to include "(A)(2) and/or (3)." All counts contained firearm specifications pursuant to R.C. 2929.14 and 2941.145.

{¶3} On December 21, 2018, Miller filed a Motion to Dismiss for Double Jeopardy in which he argued that he pled guilty to possessing the same firearm in a Summit County case. The court denied the Motion in a January 2, 2019 Judgment Entry.

{¶4} A jury trial commenced on March 18, 2019. The following pertinent testimony was presented:

{¶5} Walter Collins testified that on September 5, 2016, he and DeAngelo Frost, as well as Frost's girlfriend, Monisha Hite, went to a Ravenna bar called the Den. During the course of the evening, he had a beer and another alcoholic drink. While inside, he observed Miller outside drinking with a few other individuals: Marquita Jordan, Ty Jordan, and Miller's girlfriend, Brianna Woods. Collins had known Miller for about six or seven years because they were "around the same crowds." Collins testified that he and Miller had been in a fight previously.

{¶6} According to Collins, while at the Den that evening, Miller sent messages inside the bar to Frost about him owing child support. Collins testified that at one point in

2

the evening, he heard Marquita say that Frost owed her child support. Frost told Collins that he knew Miller had a gun but was not worried about it.

{¶7} After spending some time inside the bar, Collins went outside and saw Marquita and Monisha fighting. Collins then went around the corner and observed Miller say to Frost "give me all your money." Miller pulled out a gun and pointed it to Frost's head. Frost slapped the gun, which went up in the air, and ran. Collins described that a few shots were fired, Frost ran around the corner toward Main Street, where another bar named the Cimmaron was located, and a few additional shots were fired. He described the shots as being fired in short succession. Collins did not see some of the shots because he was hiding. The shots he saw were aimed in Frost's direction and he believed shots were fired in multiple directions. He described the gun used as a silver semi-automatic and believed the gun presented by the State looked like the one used by Miller. The first time Collins spoke to police was December of 2018 when police came to NEOCAP where he was staying and questioned him about the shooting.

{¶8} During the shooting, several individuals were present outside the Cimmaron bar approximately a block down the road. Rachel Gulakowski, a bartender at the Cimmaron, saw a group of approximately 11 to 12 people outside of the Den. She saw someone running and heard about four or five gunshots. She observed red flashes that looked like fire facing in her direction. Destiny Gonzales, a patron at the Cimmaron, was there with her friends Kristin Papp, Jamie Dolin, Daniel Campbell, and Brian Henderson. Gonzales described hearing a gunshot and believed a bullet came within a foot or two of her. Papp said she heard "something" come toward them and became scared and panicked but was unsure whether it was a bullet at the time, although she later believed

3

it was. Dolin said she heard a "possible gunshot" and thought a bullet came within five feet of her. None of these individuals saw the shooter or could identify him.

{¶9} Sergeant David Firtik of the Ravenna Police Department responded to a 911 call of a shooting at the Den, a bar located in downtown Ravenna which he described as the scene of many past fights, at approximately 11:25 p.m. on September 5, 2016. He spoke with a bartender who was able to identify two women, Brianna Woods and someone she called "Marqueen," present during the shooting. Eight spent shell casings and two live rounds were located on the road and sidewalk in front of the Den, on the southeast corner of the intersection of Meridian and Locust. The casings were from a 9mm semi-automatic gun. He testified that the casings showed the shooting took place on the sidewalk or edge of the road outside of the Den. He believed the unspent bullets demonstrated a likely malfunction with the gun.

{¶10} Detective Duane Kaley of the Ravenna Police Department investigated this case and characterized Miller and Frost as "street rivals." He stated that other interviews conducted had indicated Frost and Collins were present at the Den on the night of the shooting, although he had difficulty obtaining witness cooperation. He explained that Frost had been shot at in a Ravenna gas station parking lot on August 19, 2016, and the day after the Den shooting, Miller was shot in Ravenna. Frost was a suspect in the latter shooting.

{¶11} Kaley also testified regarding recorded phone calls from the jail following Miller's arrest, in which Miller stated he had been "beefing" with Frost and the person on the other end said "if it wasn't for [Marquita Jordan] you shouldn't have been amped up."

{¶12} Kaley indicated that he had interviewed Frost but did not recall parts of the

4

interview. The prosecutor requested to play the audio of the taped interview to refresh his recollection, to which the defense objected. The recording was played and the following instruction was given to the jury: "Folks, remember, this statement is not being made under oath by Mr. Frost. It is just part of the investigation and he's not under oath. Again, it's just for the value that you may take away." In the interview, Frost stated that he had been at the Den on the night of the shooting and identified several others that were present, including Collins. He stated that Marquita and Monisha, the mothers of his children, got into a fight in front of the bar, which he tried to break up. According to Frost, Miller, who he identified in a picture, pulled a gun out, Frost smacked the gun and then ran away toward the Cimmaron. He heard shots being fired.

{¶13} Scott Scislo, Miller's parole officer from a prior offense, visited Miller's residence on September 16, 2016, after being advised by Detective Kaley that Miller was the victim of one shooting and a suspect in another. Multiple people were present with Miller in the residence and one man appeared to be trying to hide something in the couch which led Scislo to conduct a search. During that search, he recovered a silver and black Smith and Wesson handgun in the living room under a pile of clothes and next to prescription medication bearing Miller's name. He also collected a cell phone which Miller admitted he owned. Scislo testified regarding a journal entry from Summit County which showed Miller was convicted in November 2016 for Having Weapons While Under Disability, relating to the recovery of the firearm from his residence. Daniel Brand of the Summit County Clerk's Office also testified to identify that entry.

{¶14} Detective Ronald Kennedy of the Akron Police Department assisted with the parole check. He testified that during an interview, Miller admitted owning the gun

5

taken from his residence, described as a Smith and Wesson semi-automatic gun which was silver with a black grip. He testified that Miller had stated he got it two weeks prior because he had been shot twice in Ravenna.

{¶15} Josh Barr, a forensic scientist with the Ohio Bureau of Criminal Investigation, Firearms Section, tested the gun that was recovered at Miller's residence and compared it to the cartridge casings at the scene of the Den shooting. He testified, to a reasonable degree of scientific certainty, that all eight fired casings matched test fire from the gun that was recovered from Miller's apartment.

{¶16} Detective Jason Smallfield of the Ravenna Police Department examined cell phone records and data that were extracted from the phone recovered from Miller. A witness from T-Mobile, Ronald Witt, indicated that the cell phone records stated Miller was the subscriber for that phone. According to Smallfield, there was no cell phone data before September 7, 2016, which led in part to his belief that the cell phone was "wiped" or "factory reset" which hides or destroys information on the phone. Smallfield indicated that he could not state the exact time the phone was wiped clean or whether this occurred more than once, although it was done sometime between September 6, 2016 at 2 a.m. and September 7 at 2:30 p.m. He could pinpoint this timeframe by reviewing when applications were reinstalled on the phone. He also testified regarding phone conversations Miller had with a female from the jail in which he asked her to "wipe" his iCloud account and his phone and provided his password. He testified that photos and videos with Cameron or his voice in them were on the phone as well as a picture of his girlfriend.

{¶17} Smallfield testified that Miller's cell phone records showed a call made at

10:42 p.m., approximately 45 minutes before the shooting, hit off of a cell phone tower about a half mile from the site of the shooting. A call made at 11:42 p.m., after the shooting, hit on a tower about a mile from the Den. Smallfield opined that this demonstrated the cell phone was within that area at those times. The records also demonstrated that the cell phone was in the vicinity of the King Kennedy Center on September 6, 2016, where Miller was shot on that day.

{¶18} Detective Paul Fafrak of the Kent Police Department testified that Miller had been convicted of trafficking in drugs and possession of cocaine in 2010 in the Portage County Court of Common Pleas. He testified that this type of conviction would bar an individual from possessing or owning firearms.

{¶19} The defense called Brian Henderson, who was present at the Cimmaron during the shooting. He testified that he heard gunshots, glanced over, and saw someone shooting in the air. He did not see anyone push the shooter's hand.

{¶20} Following the close of the case, the defense raised multiple motions for a mistrial relating to the jury and juror conduct, which were denied.

{¶21} The jury found Miller guilty of one count of Felonious Assault, with Frost as the victim, and Having a Weapon While Under Disability and the accompanying gun specifications. He was acquitted of Attempted Murder, Aggravated Robbery, and the remaining six counts of Felonious Assault, which related to the individuals who had been present at the Cimmaron.

{¶22} A sentencing hearing was held on February 19, 2019. Miller was ordered to serve consecutive prison terms of eight years for Felonious Assault and three years for Having a Weapon while Under Disability. The firearm specifications merged and he was

7

ordered to serve an additional three years for the specification. This sentence was memorialized in a February 20, 2019 Judgment Entry.

{¶23} Miller timely appeals and raises the following assignments of error:

{¶24} "[1.] The trial court erred as a matter of law when it reviewed a recorded statement of the victim in violation of the due process clause of the 6th and 14th Amendments to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

{¶25} "[2.] The trial court erred as a matter of law when it allowed evidence of Miller's prior conviction to which he stipulated and prior bad acts evidence in violation of the due process clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

{¶26} "[3.] The trial court erred as a matter of law by allowing Miller to be prosecuted twice for the same offense in violation of the due process clause of the 14th Amendment to the U.S. Constitution, the Double Jeopardy Clause of the 5th Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

{¶27} "[4.] Miller's convictions are against the manifest weight of the evidence possession [sic] in violation of the due process clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10, & 16 of the Ohio Constitution.

{¶28} "[5.] The cumulative effect of the errors deprived Miller of a fair trial in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution."

{¶29} As an initial matter, we will consider the first and second assignments of error together as they both require application of a harmless error analysis which impacts

8

the outcome of this matter. In his first assignment of error, Miller argues that the trial court erred when it allowed the State to play a recorded interview with Frost during Detective Kaley's testimony to refresh his memory since Frost did not testify. He argues this violated his constitutional right to confront Frost.

{¶30} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." "[T]he admission of a testimonial hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment unless (1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant." *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 173. "The Supreme Court held that the right to confrontation applies to all 'testimonial statements.'" *State v. Wade*, 11th Dist. Lake No. 2019-L-065, 2020-Ohio-2894, ¶ 31, citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), syllabus. The proper inquiry for a determination as to whether a statement is testimonial is "'whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.'" *State v. Metter*, 11th Dist. Lake No. 2012-L-029, 2013-Ohio-2039, ¶ 35, quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir.2004); *Wade* at ¶ 32, citing *Davis v. Washington*, 547 U.S. 813, 814, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (statements are testimonial when there is no "ongoing emergency" and "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution"). The Supreme Court has held that testimonial statements include "at a minimum": "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and * * * police

9

interrogations." *Crawford* at 68.

{¶31} "Although we generally review decisions on the admission of evidence for an abuse of discretion, appellate courts apply a de novo standard of review to evidentiary questions raised under the Confrontation Clause." *State v. Zaccone*, 11th Dist. Trumbull No. 2017-T-0070, 2018-Ohio-5340, ¶ 13, citing *State v. Edwards*, 11th Dist. Lake No. 2012-L-034, 2013-Ohio-1290, ¶ 24.

{¶32} As an initial matter, the State argues that a plain error standard of review should apply because Miller's objection to allowing Frost's interview to be played was made pursuant to an Evid.R. 612 error, which relates to the circumstances under which a writing may be used to refresh a witness' recollection, not a constitutional violation. Where an objection to an alleged Confrontation Clause violation is not raised, a plain error standard of review is applied. *State v. Habo*, 11th Dist. Portage No. 2012-P-0056, 2013-Ohio-2142, ¶ 35. "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001).

{¶33} When the prosecutor asked to play the recording of the interview with Frost, defense counsel stated "I'll object for the record." After the tape began to play, counsel asked to approach and stated: "Since, clearly, we're going to be hearing statements from DeAngelo Frost, I'd like to –an instruction to the Jury that this is not testimony, 'cause if it is testimony, then it's got to be under oath and nothing he stated in that meeting is under oath. So either we want an instruction to the Jury or Mr. Frost to come in and testify." When the State agreed to an instruction, defense counsel noted he was not withdrawing the objection. The court instructed the jury that the statement made by Frost was not

under oath and was "just part of the investigation" and was "just for the value that you may take away." On a subsequent day of trial, after Kaley's testimony was complete, defense counsel filed a motion for a mistrial, which cited the Sixth Amendment and the Confrontation Clause.

{¶34} While defense counsel did not specifically state the objection was on the grounds of the Confrontation Clause prior to the playing of the recording, it was evident he took issue with the testimonial nature of the statement and that Frost was not present in court, which obviously prevented cross-examination. Nonetheless, under either standard, the outcome would be the same, as addressed below.

{¶35} The State concedes that Frost's interview contained testimonial statements which were the result of police attempting to establish events relating to criminal prosecution, that were not made during an emergency, and the record did not indicate he was unavailable for trial. Thus, the State admits that "Miller was denied the right to confront his accuser in violation of the Sixth Amendment [and] the trial court erred in allowing the State to play the recording to refresh Detective Kaley's recollection."[1] We agree that this is consistent with the record before this court and the law. Frost did not testify in court, no reason was presented for his failure to testify, and his statements were made to police questioning him in the investigation of the present crime, as well as other shootings. Playing the recording implicated the Confrontation Clause as there was no chance to cross-examine Frost and constituted error by the trial court. The State argues,

---

1. Although the State does not contend that admission of the recording to refresh Kaley's recollection excepts its admission from application of the Confrontation Clause, we still note that it has been held that when evidence, such as a videotaped interview or a statement is being used to refresh a recollection, it should not be played or read in open court. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 57; *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 230-231.

however, that this error was harmless because it did not impact the jury's verdict or result in a manifest injustice. We will address this issue jointly with the second assignment of error below.

{¶36} In his second assignment of error, Miller argues that admission of evidence of prior convictions to which he had stipulated constituted impermissible prior bad acts evidence and was violative of his right to due process under *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981.

{¶37} "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *State v. Hoerig*, 11th Dist. Trumbull No. 2019-T-0012, 2020-Ohio-1333, ¶ 59, citing *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991).

{¶38} To obtain a conviction for Having Weapons While Under Disability pursuant to R.C. 2923.13(A)(2) and/or (3) as contained in the indictment, the State had to prove that Miller did knowingly acquire, have, carry, or use a firearm and that he had "been convicted of" either "any felony offense of violence" or "any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."

{¶39} "Pursuant to Evid.R. 403, in a case alleging a violation of R.C. 2923.13, when the name or nature of a prior conviction or indictment raises the risk of a jury verdict influenced by improper considerations, a trial court abuses its discretion when it refuses a defendant's offer to stipulate to the fact of the prior conviction or indictment and instead admits into evidence the full record of the prior judgment or indictment when the sole

12

purpose of the evidence is to prove the element of the defendant's prior conviction or indictment." *Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981, at ¶ 40. The court noted that revealing the name and nature of the convictions can create a risk of unfair prejudice: "'if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial.'" (Citations omitted.) *Id.* at ¶ 36.

{¶40} There is no question that Miller agreed to stipulate to the fact that he had a prior drug conviction that prohibited him from possessing or using a firearm for the purposes of a Having Weapons While Under Disability charge. Nonetheless, multiple witnesses were permitted to testify as to the nature of the felony drug convictions, identifying the drug offenses committed, and reference the judgment entries of conviction, over defense counsel's objections. The State concedes that under *Creech,* this was impermissible as the evidence of the nature of the convictions was unnecessary to establish the element of having a prior conviction. It contends, however, that reversal is not warranted because it did not impact the jury's verdict.

{¶41} As to both the Confrontation Clause issue and the admission of the testimony regarding the prior drug convictions, there is no question that error was committed. The question is whether the other evidence in the record was of an overwhelming nature such that it could overcome this error and ensure that Miller was not deprived of the right to a fair trial. We find that it is not.

{¶42} "Confrontation Clause violations are subject to harmless error analysis." (Citation omitted.) *Zaccone*, 2018-Ohio-5340, at ¶ 33. "A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt. * * * Whether

13

a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 78. A lack of prejudice exists where there is "other evidence of guilt" before the jury that is "overwhelming." *Edwards*, 2013-Ohio-1290, at ¶ 40.

{¶43} Similarly, erroneous admission of evidence of bad acts under Evid.R 404(B) can also be overcome where error is harmless. In such instances, the appellate court "must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, syllabus. Where there is "evidence of appellant's guilt other than the record of his prior convictions" that is "overwhelming," failure to accept a stipulation to a prior conviction is harmless error. *State v. Irby*, 11th Dist. Trumbull No. 2015-T-0018, 2015-Ohio-5467, ¶ 96-97.

{¶44} While it could be argued that, taken individually, either the Confrontation Clause error or the other bad acts error alone may not have resulted in an unfair outcome, together, there is no question that this was the case. Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial, even though each of the numerous errors does not individually constitute cause for reversal" or harmless error. *Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, at ¶ 257; *State v. Goff*, 82 Ohio St.3d 123, 140, 694 N.E.2d 916 (1998). The evidence properly before the jury could not overcome the cumulative effect of admitting the improper evidence.

14

{¶45} Due to the errors, the jury was presented with evidence that Miller was the type of defendant who possessed and trafficked drugs, specifically cocaine, resulting in prejudice. Further, rather than weighing whether the testimony of Collins alone was sufficient to identify Miller as the shooter, the jury had before it the statement of the victim, who may have been best suited to identify Miller. These glaring errors cannot be overcome by the evidence in the record, which does not rise to the level of "overwhelming."

{¶46} Only one witness testified who could identify Miller as the shooter, Collins. Reasonable issues were raised regarding his credibility, including a prior dispute he had with Miller, his criminal record and residence in NEOCAP, and that he had been drinking on the night of the shooting. Despite all of the other individuals present at the Den during the shooting, no other eyewitness testimony identifying Miller was presented.

{¶47} While other pieces of evidence were present in the record to increase the likelihood of Miller's involvement, i.e., the firearm and cell phone record testimony, neither of these act to identify Miller as the shooter. Such evidence could easily place him at the bar with a different shooter borrowing his gun, since fingerprint and DNA evidence were never collected from the gun by police, or even at another location in Ravenna. Similarly, evidence such as jail phone call records show that Miller may have had some dispute with Frost, not that he was involved in the shooting.

{¶48} Taken together, this evidence is simply not sufficient to overcome the errors made in the trial court. It can hardly be questioned that the jurors likely weighed in their analysis the fact that the victim himself identified Miller as the shooter and this impacted their calculus in reaching a verdict, especially given the limited advisement by the judge

15

that Frost's statements were "just for the value that you may take away." *See Edwards*, 2013-Ohio-1290, at ¶ 38 ("[m]ost testimonial statements are too damaging for a lay juror to separate and/or ignore"). Harmless error is found where the court can be assured that the mistakes made below did not impact the outcome of the trial; given the gravity of the improperly admitted evidence, the underwhelming nature of the other evidence, and the degree to which these were intertwined, this court cannot find the error was harmless. *See State v. Brown*, 2013-Ohio-1099, 988 N.E.2d 924, ¶ 79 (11th Dist.) (rejecting the doctrine of harmless error where the "paucity of supplementary direct, as well as circumstantial evidence" could not "overcome the prejudice appellant sustained as the result of" improperly admitted evidence, and there was a "substantial risk that the jury relied upon [an improperly admitted statement] in arriving at its verdict").

{¶49} For the foregoing reasons, we reverse Miller's convictions for Felonious Assault and Having Weapons While Under Disability and remand for a new trial.

{¶50} We note, however, for the purposes of clarification upon retrial, that as to the "other acts" evidence of Having Weapons While Under Disability, the written stipulation entered by Miller stated only that he stipulated to a prior drug conviction and did not address the disability conviction. Regardless, the State contends that testimony and evidence about this prior conviction was properly admitted pursuant to Evid.R. 404 to show his possession and ownership of the gun used in the shooting, not as a prior bad act. We agree.

{¶51} Pursuant to Evid.R. 404(B): "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

16

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶52} The testimony presented established that he was convicted of a prior Having Weapons While Under Disability offense and that this was the result of Miller's entry of a guilty plea for possessing the firearm discovered in his apartment. This helped to demonstrate his ownership of the gun that was used in the Den shooting. It has been held that the general rule of excluding other acts evidence "does not apply where the evidence of another crime is relevant and tends directly * * * to prove * * * [the] accused's guilt of the crime charged" and that evidence of prior criminal acts can be introduced for the purpose of establishing possession of the gun used in the present crime. (Citation omitted.) *State v. Watson*, 28 Ohio St.2d 15, 20-22, 275 N.E.2d 153 (1971). Under these circumstances, where the conviction demonstrated admission to possession of the same weapon used in the Den shootings and it was not admitted to show the character of Miller to demonstrate conformity therewith, evidence of this conviction was not prohibited under Evid.R. 404(B).

{¶53} The first and second assignments of error are with merit.

{¶54} In his third assignment of error, Miller argues that the court erred by allowing him to be prosecuted twice for the offense of Having Weapons While Under Disability. He contends that double jeopardy applies because he was charged twice for possession of the same gun. As this issue may be implicated on remand, we will address it here.

{¶55} The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that no person shall be "twice put in jeopardy" for committing the same offense. The Double Jeopardy Clause prohibits "(1) a second

prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." (Citation omitted.) *State v. Gustafson*, 76 Ohio St.3d 425, 432, 668 N.E.2d 435 (1996).

{¶56} A de novo standard of review is applied to the trial court's determination regarding the application of the double jeopardy clause. *State v. Silka*, 11th Dist. Ashtabula No. 2015-A-0053, 2016-Ohio-5784, ¶ 11.

{¶57} Miller highlights the standard set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "The *Blockburger* test applies 'where the same act or transaction constitutes a violation of two distinct statutory provisions' and requires the reviewing court to evaluate the elements of each statutory provision to determine 'whether each provision requires proof of a fact which the other does not,'" which test focuses on "the elements of the two statutory provisions," rather than the evidence. (Citation omitted.) *State v. Mutter*, 150 Ohio St.3d 429, 2017-Ohio-2928, 82 N.E.3d 1141, ¶ 17, citing *Blockburger* at 304. As noted by the State, this provides little guidance in the present instance as there is no question the two offenses for which Miller was convicted have the same statutory elements, as they are the same crime, and this is not an instance where there is a violation of "two distinct statutory provisions." The question is whether there were two separate criminal acts when Miller possessed the weapon at different times which justified being convicted of the same offense, Having Weapons While Under Disability, on multiple occasions.

{¶58} Double jeopardy in relation to multiple offenses of having weapons under disability has generally been raised in relation to merger issues and separate punishments. The analysis conducted in both the case of merger and prosecution for the

18

same offense is similar in that it addresses whether different offenses have been committed by the defendant's conduct. In both instances, courts consider whether the acts were "committed separately." *State v. Elersic*, 11th Dist. Lake No. 2002-L-172, 2004-Ohio-5301, ¶ 43 ("[b]ecause appellant's two acts were committed separately resulting in two separate offenses, double jeopardy protection does not apply"); *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892 (2015), paragraph three of the syllabus (offenses "committed separately" do not merge as allied offenses).

{¶59} Courts addressing the issue in the context of convictions for possessing multiple weapons while under disability have found that R.C. 2923.13's intent is to focus on the "transaction of having the weapons." *State v. Johnson*, 11th Dist. Trumbull No. 2016-T-0091, 2018-Ohio-2465, ¶ 43, citing *State v. Pitts*, 4th Dist. Scioto No. 99 CA 2675, 2000 WL 1678020, *13 (Nov. 6, 2000). Applying similar logic, here there were separate "transactions" of having the weapon. The gun was in Miller's possession at different times, once being used in a crime and another time being present at his home over a week later. Courts have held that the crime of having a weapon under disability was committed by separate conduct when a gun was possessed by a defendant during separate crimes on different days. *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 216-217 (finding weapons-under-disability offenses were committed with separate conduct when the defendant "possessed a handgun on four separate occasions at different times and locations" and allowing a sentence for each of the four offenses); *State v. Talley*, 2016-Ohio-8010, 74 N.E.3d 868, ¶ 29-30 (6th Dist.) ("the two offenses were separated by a period of four days and were thus committed separately").

{¶60} Miller's rationale here would lead to a conclusion that a person under a weapons disability could only be prosecuted once for such disability, an intent we do not believe is present in R.C 2923.13. Further, to the extent that the argument arises because the firearm was the same in both offenses, as noted above, it has been held that the "transaction" is relevant rather than the firearm itself. *See Johnson* at ¶ 43.

{¶61} Miller's citation to *State v. Scott*, 8th Dist. Cuyahoga No. 103696, 2016-Ohio-5929, in support of his argument is unavailing as it involved a different set of circumstances. In *Scott*, the defendant committed one act, shooting the victim, and was convicted of felonious assault and having weapons while under disability. Several years later, when the victim died as a result of complications from the shooting, Scott was convicted of voluntary manslaughter and having weapons while under disability. *Id.* at ¶ 3-4. The court found double jeopardy applied to the disability charge because it stemmed from a single act: shooting the victim. *Id.* at ¶ 13. He did not possess the gun on more than one occasion or have more than one gun; he was wrongfully convicted of the exact same act twice. Here, the charges do not both arise from possessing the gun during the shooting but possessing the gun in different places on different dates. As we find double jeopardy does not apply, it is proper to proceed with retrial of the offense of Having Weapons While Under Disability upon remand.

{¶62} The third assignment of error is without merit.

{¶63} In his fourth assignment of error, Miller argues that his convictions were against the manifest weight of the evidence. In his fifth assignment of error, Miller argues that the foregoing errors, combined with additional errors committed at trial, warrant reversal under the doctrine of cumulative error. Since the appropriate remedy for any

20

potential error alleged here would be to order a new trial, such arguments are rendered moot by our disposition of the first and second assignments of error ordering a new trial.

{¶64} The fourth and fifth assignments of error are moot.

{¶65} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the parties equally.

TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

21